# COLUMBIA NATIONAL SAND DREDGING CO.

*v.*

## MILLER.

---

EQUITY; PATENT RIGHTS; CLOUDS ON TITLE.

1. To create a cloud on title to letters patent, as well as to land, there must be an assertion of title apparently valid, but in fact without foundation in right or justice; but a vague and adroitly worded assertion of right, accompanied by a threat of litigation in support thereof, is equally effective to create cloud on title as a positive and categorical assertion of right; and where a cloud on title to letters patent has been so created, a prayer for discovery of the foundation of the claim so made is proper in a bill to remove the cloud on complainant's title to such letters patent.

2. Where the president of a dredging company, operating under a certain patent, in a letter to the patentee, who, several years after assigning such patent to the company, took out another patent and was about to organize a rival company to operate under it, made vague and adroitly worded assertions of right under the second patent, accompanying them with threats of litigation, it was *held* that such assertions were equally effective to create a cloud on the patentee's title to his second patent, as a positive assertion of right, and to support a bill in equity by

the patentee against the company and its officers, to remove the
cloud so created and for discovery of the defendant's claims, and
to justify the granting of a temporary restraining order upon such
a bill.

3. A cloud on a title can be created by matter not of record, as well
as matter of record, as in case of unrecorded transfers, convey-
ances, liens, assignments of patents, or other evidences of right,
of which parties have notice.

. No. 1197.  Submitted May 23, 1902.  Decided June 5, 1902.

HEARING on an appeal by the defendants from an order
of the Supreme Court of the District of Columbia granting
a preliminary injunction, in a suit in equity to remove a
cloud on title to a patent, and for discovery.    *Affirmed.*

The COURT in the opinion stated the case as follows:

This is an appeal from an interlocutory order of the Su-
preme Court of the District of Columbia awarding a pre-
liminary injunction.

The appellee, James M. Miller, as complainant, filed his
bill in equity in the Supreme Court of the District against
the appellants, the Columbia National Sand Dredging Com-
pany, and Philip Mauro, its president, Henry Wells, its
treasurer, and Gustavus A. Bonnet, its secretary, as defend-
ants, and alleged in it that, on January 1, 1889, he had re-
ceived letters patent of the United States, numbered
395,624, for improvements in sand-dredging and screening
apparatus; that, on May 29, 1889, the Columbia National
Sand Dredging Company had been organized and incorpo-
rated under the laws of the State of Virginia; that, on June
27, 1889, the complainant had assigned to this company all
his right, title, and interest in and to said letters patent, in
consideration of the transfer to him of 400 shares of the
capital stock of said company, 200 shares of which stock
were afterwards surrendered by the complainant to the com-
pany; that soon thereafter the company became engaged,
and yet continues engaged, in the work of dredging sand,
gravel, and other materials in the Potomac river and selling
the same for building and construction purposes; that the

complainant at different times from June, 1889, to June, 1895, acted as manager, secretary, and treasurer of said company; but that in June, 1895, he severed his connection therewith; and that from and after October 28, 1895, he ceased to be a stockholder in the company, and has now no connection whatever therewith.

He alleged further that, on October 13, 1900, he applied for, and on January 8, 1901, he received from the United States other letters patent, being No. 665,835, for improvements in sand-washing apparatus; and that he, one R. E. Doan, and others, then became engaged in the formation of a company or corporation for the purchase of said last mentioned letters patent and operating thereunder in the construction and working of sand-dredging machines equipped with said sand-washing apparatus upon the Potomac river and other bodies of water adjacent to cities, and for the supply of sand and other material for building and other construction purposes in the District of Columbia and elsewhere. He alleged that public notice had been given of the intention to form such corporation; and that a number of persons were ready to enter into the enterprise and to provide the money for the purpose, when, on August 29, 1901, the aforesaid R. E. Doan received from the president of the Columbia National Sand Dredging Company a letter of which the following is a copy:

" WASHINGTON, D. C., Aug. 29, 1901.

R. E. DOAN, Esq.:

DEAR SIR. My attention has been directed to a circular which you are distributing inviting the public to invest in a proposed sand company. While not concerned for those who may be induced to put their money into your enterprise, I feel called upon to note certain statements appearing in that circular regarding the operations and alleged profits of the Columbia National Sand Dredging Co., for which statements you have assumed responsibility before the public.

Possibly you are not aware that these statements are incorrect and misleading, but you must be aware that they are wholly unauthorized by this company. I think it fair to

give you this notice, assuming that you would not knowingly circulate misinformation.   In view of your use without permission or attempt at verification, of alleged extracts from reports of our manager, I have felt constrained to caution the public against accepting them.

Captain Miller is better informed than yourself regarding the history of the Columbia Company and a truthful statement from him of what he knows thereof would not induce any sane person to invest in the proposed new enterprise.

There is a legal and ethical point involved growing out of Captain Miller's past connection with and obligations to the Columbia Company which will, if deemed of sufficient importance, receive attention in due time.

Yours very truly,

(Signed)        Philip Mauro,

*President Columbia National*

*Sand Dredging Co."*

It was alleged further that, about six weeks afterwards, on October 14, 1901, the attorney for the complainant, James M. Miller, and also for Dora P. Miller, addressed a letter to the Columbia National Sand Dredging Company asking an explanation of the foregoing communication.   This letter was in the following terms:

" Washington, D. C., October 14, 1901.

Columbia National Sand Dredging Company, care of H. Wells, general manager, Washington, D. C.

Gentlemen :   As the attorney for Dora P. Miller, the holder of five shares of your capital stock, I have to request that you inform me as early as it is practicable what, if any, agreement there is in existence between James M. Miller, of this city, and the Columbia National Sand Dredging Company with relation to any patents secured or to be secured by him subsequent to his patent No. 395,624.

I attach to this communication a copy of the instrument by which Dora P. Miller authorizes me to act in the matter.

As the attorney for James M. Miller, I have to request an explanation of the following language used in a communica-

tion addressed to R. E. Doan, Esq., under date of Aug. 29, 1901, and signed by Philip Mauro, president Columbia National Sand Dredging Co.:

'There is a legal and ethical point involved growing out of Captain Miller's past connection with and obligation to the Columbia Company and which will, if deemed of sufficient importance, receive attention in due time.'

The explanation desired is what, if any, agreement there is in existence between James M. Miller and the Columbia National Sand Dredging Company with relation to any patents secured, or to be secured, by him subsequent to his patent No. 395,624.                    Respectfully,

(Signed)          WM. HENRY WHITE."

It is alleged that to this letter an answer was received under date of October 21, 1901, which was in the following terms:

"WASHINGTON, D. C., Oct. 21, 1901.

WM. HENRY WHITE, Esq.,

Columbian Building, City.

DEAR SIR: Your letter of Oct. 14, to the Columbia National Sand Dredging Co. has been considered by the directors and referred to me for reply. The directors do not consider that a holder of five shares of the company's stock has any right to demand information for the benefit of a hostile enterprise. The Columbia Company will choose its own time for presenting its claim in respect to Mr. Miller's recent patent for sand-dredging machinery, and meanwhile does not deem it expedient to discuss the subject in detail. I may say, however, since you are already aware of it, that Mr. Miller caused the Columbia Company to be organized for the purpose of acquiring all the inventions present and future in this line, as its charter shows, and that this was one of the inducements offered to myself and others to purchase the stock of that company.

Yours very truly,

(Signed)          PHILIP MAURO."

Further allegation of the bill of complaint is, that the claims of the defendant corporation are purposely stated in vague and indefinite terms, so as to prevent the complainant from showing their invalidity; that they are without foundation in fact; that the complainant was not one of the incorporators of the defendant company, and did not cause it to be organized for the purpose of acquiring any inventions of his subsequent to the patent No. 395,624; that the complainant did not induce any person to take stock in the defendant corporation by representations that it would have any interest in such subsequent inventions; that the .new corporation now proposed to be formed to operate under the' complainant's subsequent patent No. 665,835, is to become an active competitor of the defendant company, which now has a monopoly of the business; and that the claims of said defendant company, although unfounded in law or in equity, were intended, and did have the effect, to cast a cloud upon the complainant's title to his patent No. 665,835, and to prevent his organization of a company to operate thereunder, and to deter others from investing their money therein.

And the prayer of the bill of complaint was for a discovery of the claims of the defendant company; that such claims should be decreed to be void; and that the defendants should be enjoined from setting up the same and from all interference with the complainant in the free use and enjoyment of his aforesaid patent No. 665,835.

This bill was sworn to by the complainant. The defendants interposed a demurrer to it, on the ground that it is nowhere averred in the bill that the defendants or any of them claim to have any right, title, or interest in letters patent No. 665,835.

The demurrer was overruled and time was given to the defendants to answer; and a preliminary injunction was ordered to issue restraining the defendants as prayed in the bill. From this order or decree the defendants have appealed to this court.

*Mr. Joseph K. McCammon* and *Mr. James H. Hayden* for the appellant:

The rule applicable to cases of this sort is that equity will interpose only where the pretended title, which it is alleged constitutes a cloud, or the proceeding which is apprehended will create a cloud, is apparently valid on its face, and the party in possession will be compelled to resort to extrinsic evidence to show the invalidity of the pretended title and to defend his own. To constitute a cloud some color of title must be shown in the defendant. Accordingly, a petition praying that the defendants create a cloud upon title, and then that that cloud be removed at a subsequent stage of the same suit, is bad on demurrer. *Dunklin County* v. *Clark,* 51 Mo. 50; *Lehman* v. *Roberts,* 86 N. Y. 232; *Scott* v. *Onderdonk,* 14 N. Y. 9; 67 Am. Dec. 106. A bill which recites a pretended title in the respondent and asks relief on the ground of an apprehended injury cannot be maintained. *Torrent* v. *Booming Co.,* 22 Mich. 354; *Cox* v. *Clift,* 2 N. Y. 118; *Farnham* v. *Campbell,* 34 N. Y. 480; *Ormsby* v. *Ottman,* 85 Fed. Rep. 492; *Ute Coal & Coke Co.* v. *Schofield,* 92 Fed. Rep. 269; *Taylor* v. *Fish,* 94 Fed. Rep. 242.

*Mr. Harry G. Kimball, Mr. Wm. Henry White,* and *Mr. Jesse E. Potbury* for the appellee:

Mr. Justice Morris delivered the opinion of the Court:

The contention of the appellants on this appeal is, that the letters, written on behalf of the defendant company, and which have been set forth in full as containing the gravamen of this case, cannot be properly regarded in any legal sense as casting a cloud upon the complainant's title to his letters patent No. 665,835; that to constitute a cloud upon title some color of title must be shown in the defendant; and that a bill praying for a discovery which would create a cloud upon title and at the same time seeking a removal of such cloud, is demurrable.

As stated by this court in the case of *Welden* v. *Stickney,* 1 App. D. C. 343, following the repeated decisions of the Supreme Court of the United States in the same regard, it is the rule, in cases of alleged cloud upon title, that equity will interpose only where the pretended title, which is claimed to constitute the cloud, is valid upon its face, and the party in possession will be compelled to resort to extrinsic evidence to show its invalidity, in order to defend his own title. The rule is generally stated with reference to real estate, in connection with which the matter of cloud on title most frequently occurs; but, of course, there is no reason why it should not be applied, as far as it may, to the title to letters patent of the United States for inventions, whereof the title and mode of transfer are to a great extent assimilated to the title and mode of conveyance of real estate. It may be admitted that color of title, so far as that expression is applicable, that is, title apparently valid, but in reality without foundation in right or justice, must be shown in the defendant company in the present case, in order that the complainant may be entitled to maintain his suit; but we think that very condition of things exists here.

The demurrer of the defendants admits the truth of all the allegations of fact contained in the bill of complaint, with all the reasonable inferences to be drawn therefrom. Now, it is very plain that the two letters of the defendant company, which have been set forth in the bill, adroitly as they may have been worded in order to avoid the statement of a formal and definite claim, can have no other reasonable meaning than that the defendant company claimed some right of ownership or control over the complainant's patent No. 665,835, and any and all other patents of the same kind which he should procure. The plain inference from the letters was that no other person could acquire full and valid title thereto, and that the complainant was not at liberty to dispose of his said patent as he sought and desired to do, or to form a corporation to operate the same.

That the effect of this was to cast a cloud upon the complainant's title, seems to us to be very evident. Equity deals

with substance, not with shadow. Intentional vagueness of expression, which has all the effect of positive and categorical assertion, must be held in equity to the same consequences as specific allegation. It is not always necessary to state the extent and character of a pretended claim of title in order that it should constitute a cloud upon the true owner's title which equity will remove. If one asserts the ownership in himself of land which in truth belongs to another, it matters not greatly to this latter, or to those who would deal with him in regard to the land, whether the pretended claim is of a fee simple interest, or of a life estate, or even of a leasehold interest, if the effect is to prevent the true owner from disposing of his land as he is justly entitled to do. The existence of the cloud is one thing; the extent of it is another and a very different thing. It is the province of equity to remove it, if it exists, whether it be great or small, or whatever it may be.

The assertion of the pretended claim of title may be purposely vague and indefinite, as in the present case; and discovery may be proper in order to ascertain its true character and extent, so as that the complainant may be able to meet it with testimony. But the simple assertion of ownership, without any specification whatever of the character and extent of the ownership, or of the method by which the pretended ownership may have been acquired, would be sufficient to cast a cloud upon title. If the defendant company in this case, instead of veiling its claim in apparent mystery, had simply stated that, by its arrangement with the complainant, it was entitled to the ownership of his patent No. 665,835, there would be but little question as to its assertion, and but little question that such assertion, if unfounded in fact, cast a cloud upon the complainant's title. This is what it substantially did, although with intentional obscurity.

The argument on behalf of the appellants implies that, inasmuch as the records of the Patent Office show no assignment of the patent by the complainant, and that his title there is entirely clear, therefore there is no cloud upon it, and nothing to prevent the complainant's free disposal of it.

But this argument assumes without warrant of law that a cloud upon title can be created only by matter of record. It wholly ignores the case of unrecorded transfers, conveyances, liens, or other evidences of right, of which parties have notice. Here there were claims, doubtful and indefinite it is true, but positively alleged, of which the letters in question gave notice. It may have been, as intimated by the writer of the letters, that they depended upon representations made by the complainant at the time of the organization of the defendant company. Whatever they were, it was promised that they would probably become the subject of litigation; and if they were serious enough to become the subject of litigation, the complainant was justified in anticipating such proposed action, and regarding them as a cloud upon his title, which entitled him to the intervention of a court of equity for its removal.

It is very evident that neither party to this cause has fully developed all the facts in the case. The bill of complaint, however, shows sufficient to require an answer from the defendants. If the defendant company has a just claim against the complainant in respect of the latter's patent No. 665,835, there is no good reason why it should not state it; if its claim, on the other hand, is wholly unfounded and merely a pretense, it is no more than simple justice to the complainant that he should have the opportunity so to show. It is not apparent that the determination of the question will injuriously affect the just rights of the defendant company, or of any party to the cause.

We think that the court below was entirely right in its ruling, and that the preliminary injunction was properly issued. The order appealed from will therefore be *affirmed, with costs. And it is so ordered.*